NORDAHL, Administrator, Appellant, vs. FARMERS MUTUAL AUTOMOBILE INSURANCE COMPANY, Respondent.

*May 13—June 10, 1947.*

610

For the appellant there was a brief by *Doar & Knowles* of New Richmond, and oral argument by *W. T. Doar*.

For the respondent there was a brief by *Stafford & Stafford* of Chippewa Falls, and oral argument by *Harold E. Stafford*.

WICKHEM, J. The principal question in this case is whether plaintiff made out a *prima facie* case entitling him to go to the jury on the issues raised in the pleadings. This requires a consideration of the facts.

Decedent was the son of plaintiff and was just past seventeen years of age at the time of the fatal accident. On July 16, 1944, John Hall, Jr., was in Clear Lake, Wisconsin, with his father's 1941 Chevrolet pickup truck. The truck had a cab and a platform with sides and an endgate. The platform was about seven feet long and four feet wide. The sides were fourteen inches high. Hall met four boys on the street, one of whom was the deceased. He said he was going to Amery to a show and invited the boys to go along. On the way to Amery, which was a trip of about eight miles, decedent and one of the other boys rode on the platform of the truck. The others rode on the seat of the cab. Arriving at Amery the parties spent about fifteen or twenty minutes in a tavern and all drank intoxicating liquor. They then went to a swimming beach, picked up some girls, and drove them to their homes in Amery. They returned to the tavern. They had

planned to go to a dance at Little Falls but met Bernard Webber and Albert Swenson at Amery and changed their plans. Webber took his car and the girls and they went out north of Amery on United States Highway 8 to Baker's tavern where at least Hall drank intoxicating liquor. After spending some time there they started for Amery and on the way stopped at another tavern. At about midnight they resumed the trip to Amery. There were then four riding in the truck, three on the seat in the cab, including Hall, who was driving, and deceased, who was sitting on the platform of the truck with his back to the cab. Hall proceeded along the highway known as old 46 which crosses Apple river at what is known as the Cameron bridge. At the request of decedent they stopped at the bridge for a few minutes and then continued toward Amery. Decedent was invited to ride in the cab but decided not to because it would be too crowded. The highway known as old 46 was rough, had several short dips and a considerable number of chuckholes. The witnesses characterized the road as "washboard." Proceeding south from the intersection of County Trunk H with 46 the road curves to the east and thence south. There is at least one hill followed by two sharp curves, one to the right and one to the left. The speed maintained was variously estimated at from thirty to fifty miles per hour. About the same speed was maintained all through the evening. No unusual incidents occurred during the return trip which was over the same road on which they had driven out from Amery. Upon arriving in Amery the truck was stopped at a store and it was discovered that decedent was missing. The boys drove back and found deceased lying in the middle of the road unconscious. He died the next day from a skull fracture.

The trial court was of the view that the cause of deceased's injury rested wholly in speculation; that there were no facts out of which an inference could be drawn by any process other than guess to the effect that speed in connection with the con-

dition of the highway caused decedent to be thrown from the car.

While we are of the view that the trial court's conclusions in this respect were probably correct we shall not rest the case upon this point. Decedent was a guest. The only negligence that could be charged against the driver was, (1) that his judgment had been impaired by drinking; and (2) that he maintained too high a rate of speed in view of the condition of the road. The decedent acquiesced in all of these proceedings and assumed the risk as to each. He placed himself on the platform of the truck as a matter of choice. He made no protest against the speed maintained although the parties had come and gone at the same speed over the same road. He participated in whatever drinking there was, knew the condition of the driver and assumed the risk of any impairment in his faculties, although it should be said in this regard that there is no evidence of intoxication. On the way home from the tavern to Amery the parties stopped at the bridge at the request of decedent so that he could light a cigarette. He was able to communicate with the cab. After the car was stopped he was given the opportunity to ride in the cab and if his position on the platform involved peril at the speed maintained under the conditions could have made the change or registered protest. He did none of these things and by reason of this assumed all of the risks that by any possibility can be supposed to have had any part in his injury.

It is contended by plaintiff that the presumption of due care on the part of decedent has a bearing upon the case and requires us to presume in the absence of proof that the decedent did not change his position on the platform or otherwise contribute by negligence to his injury. Passing the point that the presumption is not an item of proof bearing on the driver's negligence it is apparent that it has no relation to appellant's assumption of risk which is a matter quite distinct from contributory negligence.

Error is assigned because the court refused to admit evidence that after the accident the driver admitted to decedent's mother that he was to blame for the accident. This evidence has no materiality so far as the issue of assumption of risk is concerned and hence the point will not be examined. The court also refused to admit evidence of admissions by the driver before the accident that his brakes were in defective condition. This was rejected by the trial court as immaterial. Certainly it is immaterial in the light of the foregoing conclusions, and in any case we discover no evidence that defective brakes had anything to do with this accident.

*By the Court.*—Judgment affirmed.